UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BARBARA GOLDSWORTHY,

    Plaintiff,

v.                                                 Case No: 2:17-cv-239-JES-CM

DISTRICT SCHOOL BOARD OF
COLLIER COUNTY, FLORIDA,

    Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of defendant's Motion to Dismiss Plaintiff's Complaint (Doc. #8) filed on October 6, 2017. Plaintiff filed a Response (Doc. #16) on November 16, 2017. For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

Plaintiff Barbara Goldsworthy (Plaintiff) filed a five-count Complaint (Doc. #1) against the District School Board of Collier County, Florida (Defendant) for intentional infliction of emotional distress (Count I), negligent infliction of emotional distress (Count II), violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., (Count III), retaliation in violation of the ADEA (Count IV), and retaliation

1

in violation of the Americans with Disabilities Act, 42 U.S.C. § 12203 (Count V).

According to the Complaint (Doc. #1): In March of 2012, Plaintiff worked as an Exceptional Student Education (ESE) teacher at Poinciana Elementary School (Poinciana). (Id. ¶¶ 9-10.) Around that time, Poinciana's vice-principal informed Plaintiff that, due to ESE students' low test scores, all ESE teachers would not be placed in ESE teaching positions for the upcoming 2012-2013 school year. (Id. ¶ 11.) As a result, Plaintiff searched for an ESE teaching position at another school but was unsuccessful. (Id. ¶¶ 19-24.)

Poinciana's principal offered Plaintiff a position as a Modified Curriculum 1 (MC1) teacher for the 2012-2013 school year, which required teaching severely disabled students. (Id. ¶¶ 26, 43.) Upon receiving that job offer, Plaintiff observed multiple MC1 classrooms. (Id. ¶¶ 29, 30.) Plaintiff informed Poinciana's principal that, because Plaintiff suffers from "back impairment," she was unsure about whether she could safely supervise the "difficult to control" MC1 students. (Id. ¶¶ 27-32.) Plaintiff additionally notified Human Resources about her safety concerns as an MC1 teacher, to which a Human Resources official responded by stating, "[i]f you can't do this job, you can't do any job." (Id. ¶¶ 29, 34.) Plaintiff then filed an EEOC charge against Defendant for disability and age discrimination. (Id. ¶ 36.)

Plaintiff ultimately accepted the MC1 teaching position for the 2012-2013 school year. (Id. ¶¶ 39-42.) During the 2012-2013 school year, Plaintiff was injured three times while supervising MC1 students. (Id. ¶¶ 41, 44-45, 51-52.) Plaintiff was again assigned to the MC1 classroom for the 2013-2014 school year. (Id. ¶¶ 67-68.) In August of 2013, "Plaintiff was severely bitten by one of her [MC1] students." (Id. ¶ 68.) Shortly thereafter, on or about August of 2013, Plaintiff agreed to drop her EEOC claims against Defendant in exchange for her being assigned to teach at North Naples Middle School (NNMS) as an ESE teacher for the remainder of the 2013-2014 school year. (Id. ¶ 70.) Plaintiff also taught as an ESE teacher at NNMS for the 2014-2015 school year. (Id. ¶ 175.)

On or about January 29, 2015, Plaintiff requested a contract extension under the Deferred Retirement Extension Program (DROP), which the NNMS principal denied. (Id. ¶¶ 176, 177.) The NNMS principal told Plaintiff her request was denied because there were not enough ESE students for the upcoming school year; NNMS retained the three other ESE teachers. (Id. ¶¶ 179, 180.) Of the three remaining ESE teachers, only one had more seniority than Plaintiff, and one "was several years younger than Plaintiff . . . ." (Id. ¶¶ 180, 181.) Plaintiff was unable to secure another teaching job for the 2015-2016 school year. (Id. ¶¶ 187, 188.) Plaintiff filed her Complaint on May 5, 2017. (Doc. #1.)

3

Defendant now moves to dismiss Plaintiff's Complaint. As to Plaintiff's claim for intentional infliction of emotional distress, Defendant argues it should be dismissed because (1) it is time-barred; and (2) Plaintiff failed to sufficiently allege that Defendant's conduct was extreme and outrageous. Defendant argues the negligent infliction of emotional distress claim should be dismissed because (1) it is time-barred; (2) Defendant is immune under Florida's Workers' Compensation Law; and (3) it is barred by Florida's impact rule. Defendant contends that Plaintiff's age discrimination claim should be dismissed because Plaintiff failed to state a prima facie case under the ADEA. Lastly, Defendant argues Plaintiff's retaliation claims should be dismissed because Plaintiff has not alleged a causal link between Plaintiff's filing of her EEOC claim and her DROP extension being denied.

## II.

Federal Rule of Civil Procedure 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating a Rule 12(b)(6) motion seeking to dismiss a complaint for failing to comply with Rule 8(a), the Court must accept as true all factual allegations in the complaint and "construe them in the light most favorable to the plaintiff." Baloco ex rel. Tapia v. Drummond Co., 640 F.3d 1338, 1345 (11th Cir. 2011). However, mere "[l]egal conclusions without adequate factual

4

support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).

To avoid dismissal under Rule 12(b)(6), the complaint must contain sufficient factual allegations to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To do so requires "enough facts to state a claim to relief that is plausible on its face." Id. at 570. This plausibility pleading obligation demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." (citation omitted)). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**III.**

**A. The Intentional Infliction of Emotional Distress Claim (Count I)**

Count I asserts a claim against Defendant for intentional infliction of emotional distress. Specifically, it alleges that Defendant intentionally assigned Plaintiff to a dangerous MC1 classroom, despite being aware of her frail condition. Defendant argues Count I should be dismissed because (1) Plaintiff's claim is time-barred; and (2) the Complaint fails to adequately allege that Defendant's conduct was extreme and outrageous.

**(1) Whether Count I is Barred by the Statute of Limitations**

The expiration of the relevant statute of limitations is an affirmative defense around which a plaintiff is not required to plead. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). Thus, dismissal of a cause of action because the defendant claims the statute of limitations has run is not warranted unless "it is apparent from the face of the complaint that the claim is time-barred." Id. (citations omitted).

Here, that is not apparent. Under Florida law, intentional infliction of emotional distress claims must be brought within four years from the date on which the cause of action accrued. Fla. Stat. § 95.11(3)(o). A cause of action for intentional infliction of emotional distress accrues when a plaintiff suffers severe emotional distress. See Kendron v. SCI Funeral Servs. of

6

Fla., LLC, 230 So. 3d 636, 638 (Fla. 5th DCA 2017). The Complaint alleges that in August of 2013, Plaintiff was bitten by a student after she was reassigned to the MC1 classroom and suffered from severe emotional distress thereafter. (Doc. #1, ¶ 68, 86.) Thus, using August of 2013 as the time the cause of action accrued, Count I would not have been time-barred until August of 2017.[1] Because Plaintiff filed her Complaint on May 5, 2017, it is not apparent from the face of the Complaint that Count I is time-barred.

**(2) Whether the Complaint Adequately Alleges Extreme and Outrageous Conduct**

Defendant argues Count I should be dismissed because Plaintiff has not sufficiently alleged that Defendant's conduct was extreme and outrageous. In response, Plaintiff argues that Defendant engaged in "a pattern [of] outrageous behavior" by

---

[1] Defendant argues Count I is time-barred because the cause of action accrued when Plaintiff sustained her three injuries and suffered from emotional distress in August and September of 2012, (Doc. #1 ¶¶ 41, 44-45, 51-52), thus making the claim filed on May 5, 2017 untimely. The Court disagrees. Florida recognizes the continuing torts doctrine. Halkey-Roberts Corp. v. Mackal, 641 So. 2d 445, 447 (Fla. 2d DCA 1994). Under this doctrine, the statute of "limitations period runs from the date the [continuing] tortious conduct ceases." Id. Because Plaintiff was assigned to the MC1 classroom for the 2012-2013 school year (Doc. #1, ¶¶ 39-42), and was then reassigned to the MC1 classroom for the 2013-2014 school year (Id. ¶¶ 67-68), Defendant's alleged conduct may constitute a continuing tort, thus altering the statute of limitations period. Therefore, at this stage of the litigation, it is not apparent that Count I is time-barred.

7

assigning Plaintiff to a dangerous MC1 classroom, despite being aware of her frail condition. (Doc. #16, p. 5.)

In order to state a cause of action for intentional infliction of emotional distress, a plaintiff must allege that: "1) the defendant acted recklessly or intentionally; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's conduct caused the plaintiff's emotional distress; and 4) plaintiff's emotional distress was severe." Johnson v. Thigpen, 788 So. 2d 410, 412 (Fla. 1st DCA 2001).

The Florida Supreme Court has established that for conduct to be extreme and outrageous, it must "go beyond all possible bounds of decency, and [] be regarded as atrocious and utterly intolerable in a civilized community." Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985). Whether a plaintiff has sufficiently alleged extreme and outrageous conduct "is a question for the trial court to decide as a matter of law." Johnson, 788 So. 2d at 413 (citation omitted).

Here, the Court finds Plaintiff has not pled any set of facts that plausibly give rise to a claim for intentional infliction of emotional distress. Accepting as true that Defendant knew the MC1 students would be especially dangerous for Plaintiff to supervise, the Court finds the alleged conduct is not "atrocious [or] utterly intolerable" behavior. Johnson, 788 So. 2d at 412; see e.g. Williams v. Worldwide Flight SVCS., Inc., 877 So. 2d 869, 870 (Fla.

8

3d DCA 2004) (employer threatening employee with job termination and directing employee "to move dangerous heavy equipment" in "dangerous weather conditions" not extreme and outrageous conduct); Lay v. Roux Labs., 379 So. 2d 451, 452 (Fla. 1st DCA 1980) (employer's threatening employee with job termination, "vicious verbal attacks, [and] racial epithets" not extreme and outrageous conduct). Count I is therefore dismissed without prejudice.

**B. The Negligent Infliction of Emotional Distress Claim (Count II)**

Count II asserts a claim against Defendant for negligent infliction of emotional distress. Defendant argues Count II should be dismissed because (1) Defendant is immune under Florida's Workers' Compensation Law; and (2) Count II is barred by Florida's impact rule.[2]

**(1) Whether Defendant is Immune under Florida's Workers' Compensation Law**

Florida's Workers' Compensation Law (WCL), Fla. Stat. §§ 440.01-.60, "compensates [workers] for injuries occurring in the workplace, without examination of fault in the causation of

---

[2] Defendant also argues Count II is time-barred. Because negligent infliction of emotional distress claims are subject to the same statute of limitations as intentional infliction of emotional distress claims, Fla. Stat. § 95.11(3)(a), it is not apparent from the face of the Complaint that Count II is time-barred for the reasons discussed supra.

9

injury." Gerth v. Wilson, 774 So. 2d 5, 6 (Fla. 2d DCA 2000). "When an employee's injury arises out of the course and scope of his or her employment, worker's compensation is the exclusive remedy for the injury, and the employer is provided with immunity from any other liability for the injury." Ruiz v. Aerorep Grp. Corp., 941 So. 2d 505, 507 (Fla. 3d DCA 2006).

The WCL does not recognize "[a] mental or nervous injury due to stress, fright, or excitement only . . . ." Fla. Stat. § 440.093(1). Instead, a "[m]ental or nervous" injury must occur "as a manifestation of an injury compensable under [the WCL]" and be "demonstrated by clear and convincing medical evidence by a licensed psychiatrist . . . ." Fla. Stat. § 440.093(2). In other words, for an employer to assert WCL immunity for negligently causing an employee emotional distress, the employee's emotional distress must (1) be documented by a licensed psychiatrist and (2) result from an injury compensable under the WCL. Id.

Under Florida law, an employer may assert WCL immunity as an affirmative defense to an employee's negligence claim. Roberts v. Cadco Builders, Inc., 694 So. 2d 845, 846 (Fla. 2d DCA 1997). Such an affirmative defense, however, is not properly raised on a motion to dismiss, unless "the [WCL] defense appears on the face of the complaint." Id. Here, the WCL immunity defense does not appear on the face of the Complaint because it is not clear whether Plaintiff's alleged emotional distress has been evaluated by a

10

licensed psychiatrist as the WCL requires. Thus, at this stage of the litigation, the Court cannot determine whether Defendant is entitled to the WCL immunity.

**(2)   Whether Count II is Barred by the Impact Rule**

In order to state a claim for negligent infliction of emotional distress under Florida law, a plaintiff must satisfy Florida's impact rule. Gracey v. Eaker, 837 So. 2d 348, 355 (Fla. 2002). The impact rule requires that "emotional distress must flow from physical injuries the plaintiff sustained in an impact." Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So. 2d 1294, 1296 (Fla. 4th DCA 1992). The impact need not be severe or cause injury. Willis v. Gami Golden Glades, LLC, 967 So. 2d 846, 850-51 (Fla. 2007). Rather, "[t]he essence of impact . . . is that the outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, touch or enter into the plaintiff's body." Id. (quotation omitted).

Here, the Court finds Plaintiff satisfies the impact rule because the Complaint alleges that Plaintiff's emotional distress flows from four injuries caused by MC1 students. (Id. ¶¶ 41, 44-55, 51-52, 68, 139, 171.) These injuries satisfy the impact rule even though the physical impacts came from a third party (the MC1 students). See Willis, 967 So. 2d at 850–51 (holding that impact

of a robber's gun pushed against employee's head because employer failed to provide adequate security satisfied the impact rule).

**C.   The Age Discrimination Claim (Count III)**

Defendant argues Count III should be dismissed because Plaintiff has failed to plausibly state a claim for age discrimination under the ADEA.  The Court disagrees.

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).   In order to state a prima facie case of age discrimination under the ADEA, a plaintiff must demonstrate that she (1) "was a member of the protected group between the age of forty and seventy; (2) [s]he was subject to an adverse employment action; (3) a substantially younger person filled the position from which [s]he was discharged; and (4) [s]he was qualified to do the job from which [s]he was discharged." Liebman v. Metro. Life Ins. Co., 808 F.3d 1294, 1298 (11th Cir. 2015) (citation omitted).

The elements of a prima facie case for age discrimination under the ADEA are altered in cases involving a reduction in force. In such cases, a plaintiff must demonstrate "(1) that [s]he was in a protected age group and was adversely affected by an employment decision, (2) that [s]he was qualified for the position held at the time of discharge and (3) evidence by which a fact finder could

12

reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision." Zaben v. Air Products & Chems., Inc., 129 F.3d 1453, 1457 (11th Cir. 1997) (citation omitted).

In order to survive a motion to dismiss, a plaintiff's claim "need not contain specific facts establishing a prima facie case . . . ." Henderson v. JP Morgan Chase Bank, N.A., 436 F. App'x 935, 937 (11th Cir. 2011). Indeed, the Eleventh Circuit "has eschewed an overly strict formulation of the elements of a prima facie case . . . in age discrimination cases." Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996). While a plaintiff is not required to plead a prima facie age discrimination claim, the claim "still must meet the 'plausibility standard' of Twombly and Iqbal." Henderson, 436 F. App'x at 937.

Here, because Plaintiff alleges her DROP extension was denied due to a lack of ESE students, the Court analyzes her claim under the reduction in force framework. In doing so, the Court finds that the first two elements of a prima facie case are easily satisfied. First, in 2012, Plaintiff was in the protected age range (64 years old) (Doc. #1, ¶ 32) and suffered an adverse employment action when her DROP extension request was denied. See Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001) ("An employment action is considered 'adverse' . . . if it results in some tangible, negative effect on the plaintiff's

employment."). Second, Plaintiff has adequately alleged she was qualified for the ESE job based upon her education, experience, and certifications. (Doc. #1, ¶¶ 173-75.)

As to the third element, although Plaintiff's factual allegations are lean, the Court finds them sufficient. Plaintiff alleges she was informed by the NNMS principal that her DROP extension was denied because of a lack of ESE students; however, Plaintiff's DROP extension denial stated that her request was denied because of Plaintiff's poor performance, even though the NNMS principal previously stated "she looked forward to having Plaintiff back." (Id. ¶¶ 158, 179, 186.) Moreover, the Complaint alleges that, of the three other ESE teachers retained by NNMS, only one had more seniority than Plaintiff, and one had been employed by NNMS for only one year and was "several years younger than Plaintiff . . . ." (Id. ¶¶ 179, 181, 183.) Based upon the totality of Plaintiff's alleged facts, the Court finds a factfinder could "reasonably conclude" that Defendant "intended to discriminate on the basis of [Plaintiff's] age" in denying Plaintiff's DROP extension. Zaben, 129 F.3d at 1457. Thus, the Court finds Plaintiff has plausibly stated a claim for age discrimination.

D.  **The Retaliation Claims (Counts IV and V)**

Counts IV and V assert that Defendant denied Plaintiff's DROP extension request as retaliation for Plaintiff filing her EEOC

claim in 2012. Defendant argues Counts IV and V should be dismissed because Plaintiff has not alleged a causal link between Plaintiff's filing of her EEOC claim and her DROP extension being denied. The Court agrees.

In order to state a claim for retaliation, a plaintiff must allege that "(1) [s]he engaged in statutorily protected expression, (2) [s]he suffered an adverse employment action, and (3) there was a causal link between the protected expression and the adverse action." King v. Adtran, Inc., 626 F. App'x 789, 792 (11th Cir. 2015).[3] "To demonstrate causation, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." Bowers v. Bd. of Regents of Univ. Sys. of Ga., 509 F. App'x 906, 911 (11th Cir. 2013) (quotation omitted). "Causation may be inferred by a close temporal proximity between the protected activity and the adverse action." Id. "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). "Even a three-month interval between the protected

---

[3] The elements of a claim for retaliation are the same under both the ADEA and ADA. See Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999); King, 626 F. App'x at 792.

15

expression and the employment action . . . is too long." Brown v. Alabama Dep't of Transp., 597 F.3d 1160, 1182 (11th Cir. 2010).

Here, the Court finds Plaintiff has not pled sufficient facts to demonstrate causation. At the time Plaintiff filed her EEOC claim in 2012, Plaintiff was working as an MC1 teacher at Poinciana. (Doc. #1, ¶¶ 10, 36.) When Plaintiff's DROP extension was denied in 2015, however, Plaintiff worked as an ESE teacher at NNMS under a different principal. (Id. ¶ 177.) Thus, as currently pled, the Complaint alleges no facts plausibly indicating that the NNMS principal who denied Plaintiff's DROP extension in 2015 was aware of Plaintiff's 2012 EEOC claim. Counts IV and V are therefore dismissed without prejudice.

Accordingly, it is hereby

**ORDERED:**

Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. #8) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The motion is granted as to Counts I, IV, and V, which are dismissed without prejudice.

2. The motion is denied as to Counts II and III.

3. Plaintiff may file an amended complaint within thirty (30) days of the date of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this 23rd day of July, 2018.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record